HENRY M. WATKINS v. WALKER COUNTY.

The owner of land adjacent to a public higway, is entitled to compensation from the county for timber trees taken from his land by the Overseer of roads, to repair said highway.

Overseers of roads are the legally constituted agents of the county from which they receive their appointment, and what they do in the proper and necessary exercise of the authority conferred upon them, the county, in its corporate capacity, is responsible for.

Error from Walker.   Tried below before the Hon. Peter W. Gray.

Petition as follows : Your petitioner, Henry M. Watkins, a resident of said county and State, would represent unto your Honor, that the said Walker county is justly indebted to him in the sum of seven hundred and fifty dollars, for three thousand trees, or thereabouts, cut and used by Isaac Whitehead, Overseer of road No. 1, in said county ; and said Whitehead was duly appointed Overseer of the same by the Court of said county, composed of the Chief Justice and Commissioners, on the —— day of ——, A. D., 1855, and that he accepted and acted under said appointment ; that said timber was cut and used, as aforesaid, during the said year 1855; after his, the said Whitehead's appointment, and while he was acting under said appointment. And, being so indebted, the said county of Walker promised and agreed to pay to your petioner so much money as he reasonably deserved to have for said trees, or so much money as said trees were reasonably worth. And your petitioner avers that they were reasonably worth the sum of money aforesaid. Afterwards, to-wit, on the 18th day of February, 1856, your petitioner filed a petition in the County Court, held by the Chief Justice and Commissioners of said county, annexed to which said petition was your petitioner's account for said trees, and that on the 19th February, 1856, said Court rejected said petition and account, and refused to pay the same or any part thereof ; said account and every part thereof was rejected by said Court ; and, upon leave granted your petioner, he withdrew his said petition and account from said Court, for the purpose of instituting suit before your Honor on the same. Said petition and account are herewith filed and made a part of this petition. Your petitioner would further represent that Stephen G. McClenny is the Chief Justice of said county, and that said County Court is now in session, &c.

Amendment of petition as follows : Further complaining your petitioner would state, that after the appointment of said Whitehead, Overseer as aforesaid, and after he accepted

said appointment, and while he was acting under it, to-wit : on the —— day of ——, 1855, in said county of Walker, the said section of road over which he was appointed, and was acting as Overseer aforesaid, became so much out of repair, and so nearly impassable in its condition as to require an unusually large quantity of trees and timber, to wit : three thousand trees and timber trees for its necessary causeways and improvements ; and the trees and timber trees of your petitioner being nearer to said section of road than the trees and timber trees of any other person, and nearer also than any public land, the said Whitehead, as Overseer aforesaid, and for the necessary causeway and improvements for a portion of said section of road, and without the consent of your petitioner, cut, or caused to be cut and carried away from the land of petitioner, on the day and year last aforesaid, in the county of Walker aforesaid, three thousand other trees, and timber trees than those mentioned in the original petition, of great value to-wit : of the average value of twenty cents per tree and timber tree, and then and there, as Overseer aforesaid, converted and appropriated the same to the necessary causeway, and improvements of said section of road. He further states that the portion of said section of road, thus causewayed and improved by petitioners trees and timber trees was not on the land of your petitioner ; and further that said three thousand trees and timber trees were cut and taken from about sixty acres of petitioner's land, and which said sixty acres of land were mostly valuable for and on account of said trees and timber trees, and, before they were cut and carried away as aforesaid, were of great value, to-wit : of the value of seven dollars per acre ; but by reason of the cutting and carrying away of said trees and timber trees, said sixty acres of land have been rendered and made of little value, to-wit ; of the value of fifty cents per acre ; wherefore petitioner says he has sustained damages to the amount of five hundred dollars, &c.

Judgment by default. Damages assessed by jury at $20.

Default set aside. Demurrer and answer filed; demurrer sustained and petition dismissed.

*Leigh* and *Baker*, for appellant, cited Dovaston v. Payne, 2 Smith L. Cas. 205 ; Id. Am. Notes to p p. 212 ; 1 Roll's Abr. 390.

*A. M. Branch*, for appellee. The County Court appoints the Overseer of the road and confers upon him no powers but those prescribed by the Statute. If the Overseer transcends that authority vested in him, the county is not responsible. The petition in this case does not allege that the County Court ordered the trees to be taken, or that the Overseer acted by the authority of the County Court in taking an unusual quantity of timber. The purchaser of lands takes, subject to all the privileges which the public has in the highways running through the lands. (See 2 Kent, 338, 339.)

WHEELER, J. The fact that the jury impanelled to assess the damages, when there was no defence, estimated the plaintiff's damage at no more than twenty dollars, renders it probable that a very different case was presented by the evidence from that stated in the petition. But, in revising the ruling of the Court sustaining the demurrer, the matters contained in the petition must be taken to be true as therein stated ; and the question is whether they are sufficient to entitle the plaintiff to maintain his action.

For the appellee it is insisted, that the plaintiff has no right of action ; for, that a private mischief is to be endured rather than a public inconvenience ; and the right of eminent domain, gives to the Legislature the control of private property for public uses. And the Legislature have declared that " when " to the overseer of the roads, it may appear expedient to

" make causeways and build bridges, the timber most conveni-
" ent may be used." (Acts 5th Legis. p. 140, Sec. 17.)

It is true, that there are cases in which the rights of prop-
erty must be made subservient to the public welfare.   There
may be cases where the right of the public rests upon a prin-
ciple of necessity, which will justify the appropriation or des-
truction of private property, without rendering the public lia-
ble to make reparation.   If a public highway be out of repair,
the passengers may lawfully go through an adjoining private
enclosure.   It is lawful to raze houses to the ground to pre-
vent the spreading of a conflagration.   These, it is said, are
cases of urgent necessity, in which no action lay at Common
Law by the individual who sustained the injury.   And it is
true too, that the right of public domain, or inherent sovereign
power, gives to the Legislature the control of private property
for public uses.   Roads may be cut through the lands of in-
dividuals without their consent ; and timber may be taken
from the adjacent lands to make the necessary causeways and
repairs, without the consent of the proprietor.   But to this
right there is, in this State, a qualification annexed by the de-
claration in the Bill of Rights, that " no person's property
" shall be taken or applied to public use, without adequate
" compensation being made, unless by the consent of such per-
" son."   And provision has been made by law for ascertaining
the injury occasioned by establishing a road through cultivated
or enclosed land, and making compensation.   (Hart. Dig. p.
854 ; Acts 5th Legis. p. 37–8, Sec. 6, *et seq.*)   There are simi-
lar declarations and provisions in the Constitutions and laws
of most of the other States.   It is held to rest with the Legis-
lature to judge of the cases which require the application of
the right of eminent domain.   It may be applied to roads,
canals, ferries, bridges, &c., provided there be, in the assump-
tion of the property, evident utility and reasonable accommo-
dation as respects the public.   But real property is held by
grant from the government, and it would be a violation of the

contract, and repugnant to the Constitution, to appropriate it to public use without compensation to the owner. This has become an acknowledged principle in most of the States, and, I presume in all whose Constitutions contain similar declarations to our own. There is no such provision in the Constitution of South Carolina ; and it was there held that the Legislature had the right to cause roads to be opened, and materials taken for keeping them in repair, without the consent of the owner, and without making compensation. But the Court. were not unanimous in this opinion. Some of the Judges expressed dissatisfaction with the decision, in so far as it claimed for the Legislature the power, without accompanying its exercise with compensation, and especially the delegation of such power to the Commissioners of Roads. (State v. Dawson, 3 Hill, S. C. R 100.) I am not aware that such a power is claimed for the Legislature in any of the States whose Constitutions contain the restriction upon the power, which ours does.

It is contended by counsel for the appellant in this case, that a highway being but a public easement, the freehold remaining in the original owner, and the public having only the right of passing and repassing, and as incident thereto, the right of digging earth and felling trees for its repair, this incidental right of the public comprehends only such uses of the property of the owner of the soil over which the road passes, as are necessary to the enjoyment of the easement, and " which, in their exercise, will " not interfere with individual rights, to the material detriment " and injury of private property ; and that where the neces- " sary exercise of such right, without the consent of the owner, " operates to the serious injury, or spoliation of private proper- " ty, the Bill of Rights secures to the party injured, an ade- " quate compensation for the injury sustained." In this we concur with counsel ; and, as presented by the petition, the present is a case which, upon this principle, clearly entitles the plaintiff to compensation. We do not suppose the Legisla-

ture intended, by the provision respecting the taking of timber, to which we have referred, the infraction of so clear a constitutional principle ; or, to claim the right to take private property for public use, without making compensation to the owner. If such were the intention, the Act in so far, is plainly unconstitutional and void. But it was probably only intended to protect the Overseer from becoming a trespasser, in going upon the adjacent lands and taking timber for the purposes of the road, where it would not be so considerable in amount and value as materially to injure or impair the value of the lands from which it was taken. This we suppose the Legislature might very well do ; for the constitutional restriction was not intended to protect the owner from a mere trespass upon his property, but from having it taken from him and appropriated to the use of the public without compensation.

It is not necessary at present to ascertain with more precision the extent or limit of the rightful exercise of the right of eminent domain, in cases like the present; or to decide more than that the case, as stated, appears to be such as to give a right of action against the county for compensation for the injury which the plaintiff claims to have sustained. Should it become necessary, when the evidence is brought before the Court, the subject may be further more particularly considered with reference to the facts of the case. The duty of providing highways for the use of the public has been confided to the counties. The Overseers of roads are the legally constituted agents of the counties from which they receive their appointment, and what they do in the proper and necessary exercise of the authority conferred upon them, the county, in its corporate capacity, is responsible for. The action appears to have been well brought, under the Statute, (Hart. Dig. Art. 206, *et seq.*) and we are of opinion that the Court erred in sustaining the demurrer, and that the judgment be reversed and the cause remanded.

Reversed and remanded.