**ADVANCE ROSS ELECTRONICS CORPORATION and Advance Ross Corporation, Appellants,**

v.

**Roy Wesley GREEN, Jr., trustee, Appellee.**

**No. 1467.**

Court of Appeals of Texas, Tyler.

Oct. 29, 1981.

Rehearing Denied Nov. 17, 1981.

John Mack Smith, Longview, for appellant.

Joe Green, Longview, for appellee.

MOORE, Justice.

This is an action for breach of a written lease agreement. Plaintiff, Roy Wesley Green (Green), sued defendants, Advance Ross Electronics Corporation (Electronics) and Advance Ross Corporation (Ross), for money damages brought about by the reduction by defendants of the amount of the monthly rental payments due under a lease. The lease was signed the same day plaintiff entered into an employment contract with defendants. The pertinent part of the lease stated:

> Lessee (defendants herein) agrees to pay Lessor (plaintiff herein) as rental for the use of said premises a total monthly rental of one and five tenths per cent (1.5%) of the total aggregate cost of the real estate, improvements, and equipment, payable in monthly installments in advance .... In the event Lessor's employment with Lessee is terminated by Lessor for any reason or terminated by Lessee for cause, then the rental rates for such month or part thereof, after that date shall be reduced to an amount equal to 1.1% of the total aggregate costs in lieu of the 1.5% heretofore mentioned.

In 1980 defendants terminated plaintiff's employment and accordingly reduced the rental payments. Plaintiff thereupon brought suit for breach of the lease agreement contending that defendants lacked cause to terminate his employment and therefore had no right to reduce the monthly rentals.

Trial was before a jury. The cause was submitted to a jury upon a special issue inquiring as to whether defendants had cause for terminating plaintiff's employment. In response the jury answered: "We do not." Judgment was rendered for plaintiff for delinquent rent in the amount of $81,000, from which defendants appealed.

We affirm.

Defendants bring eight points of error. Under the first point of error defendants contend that the trial court abused its discretion in overruling their plea in abatement. In this connection the record shows that defendants filed a plea in abatement alleging prior to the time plaintiff filed the present suit, he had instituted suit against defendants in Chicago, Illinois, for breach of the same employment contract involved in the present case and that the present suit should be abated on the grounds of comity until the suit in Illinois was finally determined.

■ While the record shows that the trial court conducted a hearing on the plea in abatement, the record does not contain any order or ruling thereon. Since however defendants concede that the plea was overruled, we shall proceed accordingly. The record before us however does not contain a statement of facts showing what evidence, if any, was adduced at the hearing on the plea in abatement. Since the propriety of a court's order overruling a plea in abatement depends upon the evidence adduced at the hearing on the plea, we are unable to determine whether or not the court erred in overruling the plea in the absence of a statement of facts. *Vestal v. Jackson*, 598 S.W.2d 724 (Tex.Civ.App.—Waco 1980, no writ); *Rancho Camille, S. A. v. Beachum*, 596 S.W.2d 632 (Tex.Civ.App.—Waco 1980, no writ); *Geyer v. Jones*, 93 S.W.2d 1192 (Tex.Civ.App.—San Antonio 1936, writ dism'd). Accordingly, defendants' first point of error is overruled.

By points two through six defendants seek a reversal asserting that the trial court erred in overruling their motion for instructed verdict and for judgment non obstante veredicto, because there was no evidence to support the submission of the issue to the jury or to support the jury's finding thereon.

The cause was submitted to the jury upon a single special issue reading as follows: "Do you find from a preponderance of the evidence that Roy Wesley Green, Jr., was terminated from his employment with defendants for cause as that term is defined below?" In response to the issue, the jury answered: "We do not."

In connection with the foregoing special issue, the court instructed the jury as follows:

You are instructed that cause for discharge is meant a failure of an employee to perform those duties in the scope of his employment as a man of ordinary prudence in an industry would have done under the same or similar circumstances, or the commission of acts by the employee in the scope of his employment which a man of ordinary prudence would not have done under the same or similar circumstances.

■ Defendants rely on the rule that there is an implied obligation on the part of an employee to do no act which has a tendency to injure the employer's business or financial interest and any breach of this obligation will justify the employer in discharging the employee from his services. *Turner v. Byers*, 562 S.W.2d 507 (Tex.Civ. App.—El Paso 1978, writ ref'd n. r. e.); *Wildman v. Ritter*, 469 S.W.2d 446 (Tex.Civ. App.—Tyler 1971, writ ref'd n. r. e.).

■ Where an agreement requires cause to terminate an employee, the burden of proof for establishing cause rests upon the employer. *Langford v. Home for the Aged Masons*, 617 S.W.2d 778 (Tex.Civ.App.— Fort Worth 1981, no writ history); *Moore v. Missouri Pacific Railroad Co.*, 264 F.2d 754 (5th Cir. 1959).

Defendants maintain that they had a right to discharge plaintiff for cause inasmuch as the undisputed proof shows that plaintiff, while acting as president of Advance Ross Electronics caused the company to pay to his father, Roy W. Green, Sr., the sum of approximately $24,000 as severance pay without the knowledge or consent of the company. The question of whether plaintiff was discharged for cause depends on whether the plaintiff acted as a man of ordinary prudence in causing the company to pay severance pay to his father. Thus, the question presented calls for a review of the evidence.

In 1970, plaintiff, Roy W. Green, together with his father, Roy W. Green, Sr., were operating a business in Longview, Texas, under the name of Roy W. Green Company. During 1970 the Greens sold their business to defendants and the name of the business was changed to Advance Ross Steel Corporation. The Greens continued to work for Advance Ross Steel Corporation for several years. During this time both plaintiff and his father worked under a written contract of employment with defendants. When the employment contracts expired in 1973, the parties decided that it would not be necessary to have a written contract of employment. In 1975 plaintiff was made president of Advance Electronics the parent company, and his father, Roy W. Green, Sr., was made vice-president of Ross Electronics.

On May 7, 1975, plaintiff, Roy W. Green, Jr., entered into a written lease agreement with defendants, which lease agreement is the basis of this suit. Under the terms of the agreement, plaintiff leased defendant certain property situated in Longview, Texas, defendants agreeing to pay a stipulated amount for monthly rental of such property. The lease agreement provided that in the event plaintiff decided to terminate his employment with Advance Ross Electronics or if his employment be terminated by defendants for cause, the monthly lease payments would be reduced by a certain amount.

In August 1978, plaintiff was instructed by defendants to terminate his father's employment with Ross Electronics as the company had concluded that his employment was no longer necessary. Thereafter plaintiff discharged his father and paid him severance pay in the amount of $24,000 which was equal to six months salary. Defendants notified plaintiff that they were not satisfied with his paying his father severance pay and thereafter on October 30, 1978, terminated plaintiff's employment. Thereupon defendants reduced the rental payments under the terms of the lease agreement and plaintiff instituted this suit alleging that defendants breached the lease agreement inasmuch as his termination was without cause.

The evidence shows that the plaintiff was given full authority to operate the company, to hire and fire employees and write checks on the company. Further, the evi-

dence shows that defendants had made severance payments to other employees over a period of several years of which plaintiff had knowledge. Plaintiff testified that when the written employment contract held by him and his father expired in 1973, Mr. Buckingham, who was then president and Chairman of the Board of both corporate defendants, promised that if either he or his father were ever terminated, they would each be given one year's severance pay. This testimony was never refuted or denied by the company. Hugh Holmes, a management consultant called by the plaintiff, testified that it was customary in the business in which defendants were engaged, to pay severance pay and that severance payment made in this instance and under the existing circumstances was usual, customary and reasonable.

In arguing that plaintiff's conduct in making the severance payment failed to measure up to that of an ordinary prudent person in the same or similar circumstances, defendants rely on the testimony showing that approximately a year before his discharge, plaintiff's father suffered a heart attack and was away from work for some time. Defendants further rely on the testimony showing that the company had lost approximately a half million dollars during 1978 and that plaintiff knew of the loss at the time the severance payment was made. Defendants also rely upon the fact that plaintiff failed to get the approval from the company prior to making the severance payment.

■ We find no merit in the contention that the trial court erred in overruling defendants' motion for instructed verdict. In our view there was ample evidence to raise a fact issue for the jury upon the question of whether defendants had cause to terminate plaintiff's employment especially since the jury was instructed that plaintiff's conduct in making the severance payment was to be measured by that of an ordinary prudent person under the same or similar circumstances. Points two and three are overruled.

■ With regard to defendants' point contending that the trial court erred in refusing to render judgment non obstante veredicto, we find no showing in the record that the motion was presented to or acted on by the trial court. The record therefore preserves nothing for review. *Murphy v. Maroney*, 456 S.W.2d 787 (Tex.Civ.App.—Waco 1970, writ ref'd n. r. e.). The fourth point is overruled.

■ With regard to defendants' "no evidence" point, it should be noted that the jury returned a negative finding to an issue on which defendants had the burden of proof. The finding does not mean that defendants did not have just cause to discharge plaintiff, but merely means that the defendants failed to discharge their burden of proving by a preponderance of the evidence that they had cause to discharge plaintiff. *C & R Transports, Inc. v. Campbell*, 406 S.W.2d 191 (Tex.1966). Under these circumstances, the complaining party is placed in the position of having to demonstrate that the evidence establishes the issue as a matter of law. "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas Law Review 361, 363 (1960). In our view the record in the instant case falls short of establishing, as a matter of law, that defendants had cause to discharge plaintiff. Points five and six are overruled.

After a review of the entire record and after weighing and balancing all the evidence, both that against and in favor of the jury's finding, we find that we are unable to agree with defendants' contention that the evidence is insufficient to support the jury's finding or that the finding is against the overwhelming weight and preponderance of the evidence. Accordingly points seven and eight are overruled.

The judgment is affirmed.