Opinion issued November 14, 2002












In The
Court of Appeals
For The
First District of Texas




NO. 01-01-00022-CV




THIN VAN TRUONG, MAI X. TRUONG, WILLIAM GIRON, AND ELENA
MANDUJANO, Appellants

V.

THE CITY OF HOUSTON, Appellee




On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 99-43156





OPINION ON MOTION FOR REHEARING 

          We deny appellants’ motion for rehearing, but withdraw our opinion and
judgment dated August 29, 2002, and substitute this opinion in its stead. 
          This case arises from the City of Houston’s (Houston) suit to enjoin appellants
from any commercial activity on their property. The trial court granted Houston’s
motion for summary judgment, which sought to enforce a deed restriction
encumbering appellants’ property. Appellants appeal from the grant of summary
judgment. We hold that (1) Houston was acting in its governmental function, and (2) 
appellants’ defenses fail to abrogate Houston’s authority to enforce the deed
restriction. Accordingly, we affirm.
Background
          Appellants, Thin Van Truong, Mai X. Truong (Truong appellants), William
Giron, and Elena Mandujano all own lots in Meadowbrook subdivision, Section “C”. 
Each of the lots borders Howard Drive. These lots are located on the outside
perimeter of the Meadowbrook subdivision. The Truongs purchased their lot in
March 1997. Giron purchased his lot in November 1995, and Mandujano purchased
her lot in February 1995. All of the lots are subject to a residential-use-only deed
restriction, which was created in August 1945. Standard of Review
          A trial court must grant a motion for summary judgment if the movant
establishes that no genuine issue of material fact exists and the movant is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166(c); Lear Siegler, Inc. v. Perez, 819
S.W.2d 470, 471 (Tex. 1991). When reviewing a summary judgment, we take as true
all evidence favorable to the nonmovant and indulge every reasonable inference and
resolve any doubts in favor of the nonmovant. Nixon v. Mr. Prop. Mgm’t Co., Inc.,
690 S.W.2d 546, 548-49 (Tex. 1985). 
Applicable Statutes
          Houston brought suit to enforce deed restrictions in appellants’ subdivision. 
Tex. Loc. Gov’t Code Ann. § 212.133 (Vernon Supp. 2002). The Local
Government Code provides that a non-zoned, incorporated city has the power to sue
to enforce any restriction contained or incorporated by reference in a recorded plan,
plat, replat, or other instrument affecting a subdivision inside the city’s boundaries. 
Tex. Loc. Gov’t Code Ann. §§ 212.131-33 (Vernon Supp. 2002). Restrictions in
a plat recorded before August 30, 1965, may be enforced, but violations occurring
before that date may not be enjoined or abated. Tex. Loc. Gov’t Code Ann. §§
212.131-33 (Vernon Supp. 2002). The restrictions at issue were recorded August 24,
1945. Thus, Houston had the authority granted to it under the Local Government
Code because the deed restrictions were being enforced after the grant of authority
to Houston and arising out of deed restrictions that were validly and timely recorded.
Discussion
          In point of error one, appellants argue that the trial court erred in granting
summary judgment for Houston. Appellants contend that they properly pleaded and
offered evidence to show the existence of a material fact on numerous affirmative
defenses sufficient to defeat the summary judgment. Specifically, appellants argue
that, when Houston enforces deed restrictions, its function is proprietary. Appellants
further urge, because its function is proprietary, Houston is subject to appellants’
affirmative defenses. For their authority, appellants rely on Oldfield v. City of
Houston, 15 S.W.3d 219 (Tex. App.—Houston [14th Dist.] 2000 pet. denied).
          On the other hand, Houston contends that appellants’ reliance on Oldfield is
misplaced. Houston claims that the Oldfield decision erroneously concluded that,
when a city enforces deed restrictions, its function is proprietary–not governmental. 
Moreover, Houston argues after the Oldfield decision was issued, the Texas
Legislature specifically addressed the issue. In 2001, the legislature amended the
relevant portions of the Texas Civil Practice and Remedies Code and the Local
Government Code to add the enforcement of land-use restrictions to the laundry list
of activities defined as governmental functions. Tex. Civ. Prac. & Rem. Code Ann.
§ 101.0215(a) (Vernon Supp. 2002); Tex. Loc. Gov’t Code Ann. § 212.137
(Vernon Supp. 2002). Consequently, Houston argues that, when it enforces deed
restrictions, it is acting in its governmental function, and thus, it is not subject to any
affirmative defenses. Finally, Houston contends that municipal enforcement of deed
restrictions should be analyzed in accordance with principles of zoning, which have
long been held to be government functions. 
          To begin our analysis, we will consider appellants’ arguments in light of (1)
Texas common law, (2) the Oldfield decision, and (3) the relevant 2001 amendments
to the Texas Civil Practice and Remedies Code and the Local Government Code. 
Lastly, we will address Houston’s argument that the functionary distinction should
be analogized in accordance with principles of zoning and land-use regulation
powers. 
Texas Common Law
          Texas courts have recognized that certain affirmative defenses do not apply 
if a city is exercising a governmental, as opposed to a proprietary, function. For this
reason, cases involving claims against a city begin with the threshold question of
whether the city was acting in a proprietary or governmental function. Bailey v. City
of Austin, 972 S.W.2d 180, 192 (Tex. App.—Austin 1998, pet. denied) (citing Gates
v. City of Dallas, 704 S.W.2d 737, 738 (Tex. 1986)). The question of where to draw
the line between the city’s proprietary and governmental functions is not an easy
one–a fact that the Texas Supreme Court has recognized. See City of Houston v.
Shilling, 240 S.W.2d 1010, 1012 (Tex. 1951).
          Under the common law, Texas courts developed certain rules for evaluating the
distinction between proprietary and governmental functions. Generally speaking, a
proprietary function is one a city performs, in its discretion, primarily for the benefit
of those within the corporate limits of the city, rather than for the use by the general
public. City of Gladewater v. Pike, 727 S.W.2d 514, 519 (Texas 1987) (citing Gates,
704 S.W.2d at 739)). Actions undertaken for the benefit of private enterprise or the
residents of the city, rather than for the benefit of the general public, were deemed
proprietary. City of Fort Worth v. George, 108 S.W.2d 929, 931 (Tex. Civ.
App.—Fort Worth 1937, writ ref’d). Governmental functions are “those public acts
which the municipality performs as the agent of the State in furtherance of general
law for the interest of the public at large.” Bailey, 972 S.W.2d at 192; Gates, 704
S.W.2d at 738-39; see also City of Houston v. Southwest Concrete Constr., Inc., 835
S.W.2d 728, 730-32 (Tex. App.—Houston [14th Dist] 1992, writ denied). The key
difference between a proprietary and governmental function is that the city functions
in its governmental capacity when it performs functions mandated by the state. 
Bailey, 972 S.W.2d at 192-93; Southwest Concrete, 835 S.W.2d at 730-32; Josephine
E. Abercrombie Interests, Inc. v. City of Houston, 830 S.W.2d 305, 308 (Tex.
App.—Corpus Christi 1992, writ denied).
          In the next section we will review Texas common law as applied in the
Fourteenth Court Of Appeals’ decision of Oldfield v. City of Houston, 15 S.W.3d 219,
226 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). 
The Oldfield Decision
          Appellants request that we follow the rule of law established by the Fourteenth
Court Of Appeals’ decision in Oldfield v. City of Houston, 15 S.W.3d 219, 226 (Tex.
App.—Houston [14th Dist.] 2000, pet. denied). The court in Oldfield held that a city
served a proprietary, rather than governmental function, when it sought to enforce the
deed restrictions. As such, affirmative defenses may be asserted to bar the city’s
enforcement of deed restrictions. Id. Houston claims that the Oldfield decision,
because it was based on the premise that enforcement of deed restrictions by a city
is a proprietary function, is erroneous. Houston further claims the decision is wrong,
because the legislature has legislatively overruled the Oldfield decision. 
2001 Legislative Amendments
          We note that the legislature has amended the statutes that relate to a city’s
function when it is enforcing deed restrictions to specifically state that, when a
municipality sues to enforce a land use restriction, it is acting in its governmental
capacity. See Tex. Loc. Gov’t Code Ann. § 212.137 (Vernon Supp. 2002). The
legislature’s action has no application to this case because the amendment became
effective on September 1, 2001, while the present case was pending. While the
legislature’s action is not outcome determinative to this case, we think the
legislature’s action supports the rationale of our decision.



          We do not accept appellants’ invitation to follow the Oldfield decision. 
Instead, we agree with Houston that the functionary distinction should be analogized
in accordance with principles of zoning and land-use regulation powers. 
Zoning Ordinances
          When the city is enforcing zoning ordinances, it is serving in its governmental
function. A governmental unit’s zoning authority is derived from the police power
of the state, and all property is held subject to the valid exercise of the power. Village
of Euclid v. Ambler Realty Co., 272 U.S. 365, 387, 47 S. Ct. 114, 118 (1926);
Lombardo v. City of Dallas, 73 S.W.2d 475, 479 (Tex. 1934). Both zoning
ordinances and land-use ordinances are valid exercises of a city’s police power to
safeguard the health, comfort, and general welfare of its citizens. Lombardo, 73
S.W.3d at 479. Land-use ordinances protect local residents from the ill effects of
urbanization and enhance the qualify of life, and, as such, are proper exercises of a
city’s police power. Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 934 (Tex.
1998); see also Weaver v. Ham, 232 S.W.2d 704, 709 (Tex. 1950) (declaring city’s
act of re-zoning a residential district to an apartment house district constitutionally
prohibited “spot zoning”); City of College Station v. Turtle Rock Corp., 680 S.W.2d
802, 806 (Tex. 1984) (finding city ordinance requiring developers to dedicate some
land to park use was not unconstitutional on its face).
          Enforcement of zoning ordinances is akin to enforcement of deed-restriction
ordinances. Both accomplish the same objectives. The enforcement of zoning
ordinances provides a judicial forum for aggrieved landowners to resolve conflicting
interests in land use. See Farmer v. Thompson, 289 S.W.2d 351, 355 (Tex. Civ.
App.—Fort Worth 1956, writ ref’d n.r.e); Morton v. Sayles, 304 S.W.2d 759, 763
(Tex. Civ. App.—Eastland 1957, writ ref’d. n.r.e.). Enforcement of zoning and deed
restrictions preserves and maximizes property values. Young v. City of Houston, 756
S.W.2d 813, 814-15 (Tex. App.—Houston [1st Dist.] 1988, writ denied) (enforcing
deed restrictions serves public purpose of maintaining property values). Finally,
courts will enforce deed restrictions and zoning laws to preserve, complement, and
advance comprehensive city or residential planning. Curlee v. Walker, 244 S.W. 497,
498 (Tex. 1922). 
          Because the enforcement of deed restrictions is like the enforcement of zoning
statutes, which qualifies as a governmental function, we hold that Houston’s action
in enforcing the residential-use-only deed restrictions against appellants is a
governmental function. 
          Our decision is supported by the Texas Supreme Court decision in City of
Brookside Village v. Comeau, 633 S.W.2d 790, 792 (Tex. 1982), in which the court
held that a municipal ordinance that regulated the location of mobile homes has the
“effect of a zoning regulation” and should be evaluated under the principles relating
to a city’s exercise of its general police power. Id. at 792. Like Houston, the city in
Comeau had no zoning ordinances. Id. at 793.
Defenses
          Having determined that the enforcement of deed restrictions by Houston is a
governmental function, we now address the merits of appellants’ defenses.
Equitable Affirmative Defenses
          Appellants concede that their affirmative defenses raised in points of error one
through four are equitable in nature. Affirmative defenses based in equity have been
consistently held not to apply when the activity complained of is a governmental
function. See, e.g., Hutchins v. Prasifka, 450 S.W.2d 829, 835 (Tex. 1970) (“the
general rule has been in this state that when a unit of government is exercising its
governmental powers, it is not subject to estoppel.”); Clear Lake Water Auth. v.
Winograd, 695 S.W.2d 632, 640 (Tex. App.—Houston [1st Dist.] 1985, writ ref’d
n.r.e.) (holding that estoppel does not apply against a unit of government exercising
its governmental functions); Capitol Rod and Gun Club v. Lower Co. River Auth.,
622 S.W.2d 887 (Tex. Civ. App.—Austin 1981, writ ref’d n.r.e.) (“the general rule
is that where a unit of government is exercising its governmental powers, it is not
subject to estoppel or laches.”); Lewis Cox & Son v. High Plains Underground Water,
538 S.W.2d 659, 662 (Tex. Civ. App.—Amarillo 1976, writ ref’d n.r.e.), overruled
on other grounds by Monsanto Co. v. Cornerstones Mun. Util. Dist, 865 S.W.2d 937
(Tex. 1993) (“the uniform rule is that the state and its essential instrumentalities are
immune from the defenses of limitations, laches, . . . and estoppel . . .”).
          Courts have, however, recognized a limited exception in some circumstances
where a party raises an equitable estoppel claim. Hutchins, 450 S.W.2d at 836. In
Hutchins, the court noted that “a municipality may be estopped in those cases where
justice requires its application, and there is no interference with the exercise of its
governmental functions.” Id. The court went on to state that estoppel in those
situations should be “applied with caution and only in exceptional cases where the
circumstances clearly demand its application to prevent manifest injustice.” Id. In
Roberts v. Haltom, the Texas Supreme Court again recognized the exception to the
general rule that a city could not be estopped as to its governmental functions. 543
S.W.2d 75, 80 (Tex. 1976). The court stated that estoppel of cities engaging in
governmental functions may be used “where justice requires and where no
governmental function is impaired.” Id. 
          In determining whether justice requires that a party be allowed to pursue his
claim of estoppel, we will look at the totality of the circumstances. The exception
will be exercised only where “justice, honesty, and fair dealing require it.” Clear
Lake City Water Auth., 695 S.W.2d at 640. We will take into account the conduct of
all parties. A party with “unclean hands” will not be permitted to pursue equitable
relief. See Foxwood Homeowners Ass’n v. Ricles, 673 S.W.2d 376, 379 (Tex.
App.—Houston [1st Dist] 1984, writ ref’d n.r.e.).
          In their third point of error, appellants assert the affirmative defense of
estoppel. In adherence to the Hutchins decision, we will allow appellants to pursue
their estoppel claim only if we find that this case is one of those “special cases” where
the circumstances clearly demand estoppel to prevent a “manifest injustice.” 
          In support of their estoppel claim, appellants assert that they relied on the non-enforcement of the deed restrictions. Appellant Mandujano offered proof that her
predecessor-in-title operated a commercial enterprise on the property, obtained
permits to operate the enterprise, and received inspections from various City
departments between 1976 and 1994. Mandujano also swore by affidavit that, since
1995, she paid license, permit, sales fees and occupancy taxes to Houston.
          The Truong appellants proved by affidavit in the summary judgment
proceedings that Houston had also issued them permits to build a commercial
structure on their property and that they spent $50,000 to make commercial
renovations. The affidavit stated that they would not have spent the money
renovating if the City had not issued the remodeling permits. The Truong appellants
also hold occupancy and sign permits from Houston.
          Giron presented proof that he received a sign permit beginning in 1996 and that
he has posted a sign in conformity with that permit continuously since that time.
          Houston argues that appellants were deceptive in obtaining the aforementioned
permits because the appellants each swore in permit application documents that their
businesses were not being conducted in violation of deed restrictions. Appellants, in
obtaining their permits, swore that they were personally familiar with the title to the
real property and that there were no deed restrictions prohibiting the issuance of the
permits. In her application for occupancy, appellant Mandujano agreed that if her
occupancy was in violation of a deed restriction, then her certificate of occupancy
would be deemed void. In his affidavit for a commercial building permit, Truong
states: “I swear that neither the improvements to be constructed under the building
permit, if issued, nor their intended use will violate any deed restrictions.” Appellant
Giron’s application for a sign permit likewise states: “the sign does not violate any
applicable deed restrictions.”
          After weighing the conduct of both parties and considering the totality of the
circumstances, we conclude that this case is not one where a manifest injustice would
occur if appellants were barred from pursuing their equitable estoppel claim. Justice,
honesty, and fair dealing do not require us to allow appellants to pursue their estoppel
claim where the permits allegedly relied upon by appellants were acquired through
their misrepresentations. We also note the relatively short period of time that
appellants have been operating their businesses in violation of the deed restrictions. 
All appellants purchased their property between 1995 and 1997. In cases such as this,
where Houston attempted to enforce the deed restrictions within five years of the
purchase of the property, we are hesitant to find reliance on the part of the appellants
to the extent that a “manifest injustice” would occur if they were not permitted to
pursue their estoppel claim. Accordingly, we hold that the trial court did not err in
granting summary judgment against appellants as to their equitable affirmative
defenses of changed conditions, waiver, estoppel, and laches. 
          We overrule points of error one through four. 
 
Proof of Granted Variances
          In their fifth point of error, appellants contend that the variances granted to
them by the Meadowbrook Civic Association released them from the residential-use-only restrictions, thus making summary judgment for Houston inappropriate. 
Appellants argue that, because the Texas Property Code allows an owner’s
association to compromise or settle litigation, the variances granted to appellants by
the owners’ association act as a settlement or compromise of the suit brought by
Houston. See Tex. Prop. Code Ann. § 204.010 (Vernon Supp. 2002). 
          The documents given to appellants by the owners’ association are not
variances. A variance is “a permission to use land in a manner forbidden by the
ordinance.” See West Tex. Water Refiners, Inc. v. S & B Beverage Co., 915 S.W.2d
623 (Tex. App.—El Paso 1996, no pet.) (citing Angus S. McSwain, The Zoning
Board of Adjustment, 13 Baylor L. Rev. 21, 29 (1961)). While the enforcement of
deed restrictions by Houston is similar to the enforcement of zoning laws, there are
no ordinances that govern the use of the land in this case. There is also no statutory
authority given to the owners’ association to allow land use forbidden by an
ordinance. The proper query here is whether, under section 204.010, the owner’s
association can settle or compromise a suit on behalf of Houston without Houston’s
consent.
          Section 204.010(a) provides in part that: “the property owners’ association,
acting through its board of directors or trustees, may: . . . (4) institute, defend,
intervene in, settle, or compromise litigation or administrative proceedings on matters
affecting the subdivision.” Id. 
          While an owner’s association is certainly granted power to institute, defend,
intervene in, settle, or compromise litigation, we are not persuaded that the owners’
association in this case was authorized to settle a lawsuit instituted by Houston. 
Houston sued appellants in this case pursuant to legislative authorization. Tex. Loc.
Gov’t Code Ann. § 230.003 (Vernon Supp. 2002). The owners’ association in this
case does not represent Houston. Rather, the owners’ association is the representative
of the owners within the subdivision. Tex. Prop. Code Ann. § 204.004(a) (Vernon
Supp. 2002) (“a property owners’ association is a designated representative of the
owners of property in a subdivision . . .”). 
          We think an absurd result would be created if owners’ associations were
allowed to compromise or settle lawsuits not instituted by the owners’ association,
especially where the parties who initiated the suit did not give the owners’ association
permission or authorization to do so. See Fleming Foods of Tex., Inc. v. Rylander,
6 S.W.3d 278, 284 (Tex. 1999) (in the interpretation of a statute, absurd results
should be avoided). 
          Our reading of section 204.004, in harmony with 204.010, suggests that the
owners’ associations may compromise litigation on behalf of the subdivision owners,
but not on behalf of parties who are not subdivision owners. See Helena Chem. Co.
v. Wilkins, 47 S.W.3d 486, 493 (Tex. 2001) (“we should not give one provision a
meaning out of harmony or inconsistent with other provisions, although it might be
susceptible to such a construction standing alone.”) (citations omitted). 
          If appellants’ interpretation of section 204.010 were correct, then any private
party who brings a lawsuit that affects matters of the subdivision could have his suit
settled or compromised by an owners’ association without any authorization from the
party bringing the suit. We decline to interpret section 204.010 in such a manner. 
Accordingly, we hold that the trial court did not err when it found that appellants did
not raise an issue of material fact by presenting proof of “variances” from the owners’
association.
          We overrule appellants’ fifth point of error.
Proof of Releases
          In their sixth point of error, appellants contend that proof of releases from
various property owners raises an issue of fact, thus making summary judgment for
Houston inappropriate. 
          Property owners in a subdivision may not grant releases of deed restrictions
without the agreement of the other owners within the subdivision. Smith v. Williams,
422 S.W.2d 168, 172 (Tex. 1967). A restrictive covenant may provide for
amendments to the restrictions, but the method of amendment must be stated. Miller
v. Sandvick, 921 S.W.2d 517, 521 (Tex. App.—Amarillo 1996, writ denied). 
          Restrictive covenants governing the operation of a residential subdivision are
to be liberally construed to give effect to their purposes and intent. Tex. Prop. Code
Ann. § 202.003(a) (Vernon 1995). Whether restrictive covenants are ambiguous is
a matter of law for the courts to decide. Roman Catholic Diocese of Galveston
Houston v. First Colony Cmty. Serv. Ass’n, Inc., 881 S.W.2d 161, 163 (Tex.
App.—Houston [1st Dist.] 1994, writ denied). Words and phrases in the covenant
must be given their commonly accepted meaning. Wilmoth v. Wilcox, 734 S.W.2d
656, 657-58 (Tex. 1987). 
          The deed restriction document applicable to this case states that the releases
must be from more than 50% of the owners of the front footage lots, and must be
executed in writing at least two years before “the expiration of any fifteen (15) year
period thereafter.” Houston contends that the applicable fifteen-year period ended
on August 24, 2000, and, because appellants did not receive the releases previous to
August 24, 1998 (two years previous to the expiration of the fifteen-year period), the
releases were not timely. Houston also argues that appellants did not receive releases
from more than 50% of the owners of the front footage lots. 
          Appellants concede that the releases granted to them were not timely, but they
argue that the purpose of the two-year period is to provide notice to the other
residents of the changes that were authorized. Appellants state that here, where the
property had previously been used for business purposes, the two-year requirement
should be waived. We disagree.
          A valid release from a deed restriction affects the rights of all property owners
within the subdivision. The agreement between the owners of the property,
documented in the deed restriction, provides a specific method to be used for granting
releases. The document is unambiguous in its requirement that the releases be in
writing and executed at least two years before the expiration of the applicable fifteen-year period. The ongoing violation of deed restrictions by appellants does not inform
property owners that their rights are being affected in the same manner that a valid
release does. Accordingly, we conclude that the trial court did not err when it found
that appellants did not raise an issue of fact by providing the court with proof of their
invalid releases. Because we have found that appellants did not raise an issue of fact
with proof of the invalid releases, we decline to address Houston’s proposition that
appellants did not acquire the requisite number of signatures to obtain valid releases.
          We overrule appellants’ sixth point of error.
Proof of Deed Restrictions
          In their seventh point of error, appellants contend that summary judgment for
Houston was not proper because Houston never offered the deed restrictions as part
of its summary judgment proof.
          Appellants refer us to McConnell v. Southside Indep. Sch. Dist. in support of
their contention that Houston’s motions for summary judgment were fatally flawed
because they did not contain evidence of the deed restrictions applicable to this case. 
858 S.W.2d 337 (Tex. 1993). McConnell stands for the proposition that the grounds
for the summary judgment motion must be presented in the motion for summary
judgment itself; presenting the grounds for summary judgment in any collateral
documents will not suffice. Id. at 340-41. It is important to note that McConnell was
referring specifically to the “grounds” for the summary judgment motion, not the
evidence for it. The court stated in that case that “a motion for summary judgment
must itself expressly present the grounds upon which it is made. . . . [r]eliance may
not be placed on briefs or summary judgment evidence. Id. at 341. 
          Appellants do not contend that the grounds for summary judgment relief were
not stated adequately in the summary judgment motion; rather, appellants complain
that Houston’s motions for summary judgment did not contain the very deed
restrictions from which the grounds were derived. Because appellants’ complaint is
based upon a lack of evidence, and not a lack of grounds, we conclude that the
holding of McConnell does not apply here. 
          With regard to the evidence of the deed restrictions at issue, we conclude, after
reviewing the clerk’s record, that Houston did offer evidence of the deed restrictions
as part of its summary judgment proof. A certified copy of the deed restriction in
question was attached to Houston’s response to appellant Mandujano’s response to
Houston’s motion for summary judgment. Another copy of the deed restriction was
attached to Houston’s response to appellant Truong’s response to Houston’s motion
for summary judgment. Accordingly, we conclude that appellants’ seventh point of
error is without merit.
          We overrule appellants’ seventh point of error.
Defect of Parties
          In their eighth point of error, appellants argue that summary judgment was in
error because Houston failed to join the owners of all lots within the subdivision as
parties. Appellants cite two cases to support their proposition that all owners of the
lots in the subdivision should have been joined, both of which involve declaratory
judgment actions.


 The Texas Civil Practice and Remedies Code provides, with
respect to declaratory judgment actions, that “all persons who have or claim any
interest that would be affected by the declaration must be made parties.” Tex. Civ.
Prac. & Rem. Code Ann. § 37.006 (Vernon 1997). 
          We are not governed by section 37.006 in this case because the suit brought by
Houston is not a declaratory judgment action. Rather, the joinder issue in this case
is governed by Rule 39(a) of the Texas Rules of Civil Procedure. 
          The proper procedural tool used to raise an issue of a defect in parties is a
motion to abate. A motion to abate is used to challenge the plaintiff’s pleadings by
alleging facts outside the pleadings that prove the suit cannot go forward in its present
condition. Texas Highway Dept. v. Jarrell, 418 S.W.2d 486, 488 (Tex. 1967); 
Martin v. Dosohs I Ltd., 2 S.W.3d 350, 354 (Tex. App.—San Antonio 1999, pet.
denied). In the motion to abate, the defendant must (1) identify any impediment to
the continuation of the suit, (2) identify an effective cure, and (3) ask the court to
abate the suit until the defect is corrected. Martin, 2 S.W.3d at 354 (citing Jarrell,
418 S.W.2d at 488). To review the trial court’s ruling on a motion to abate, we must
be provided with a statement of facts from the hearing on the motion to abate. 4M
Linen & Uniform Supply Co., Inc. v. W.P. Ballard & Co., Inc., 793 S.W.2d 320, 322-23 (Tex. App.—Houston [1st Dist.] 1990, writ denied). Without a statement of facts,
we must presume the evidence supports the court’s ruling. Id.; see Advanced Ross
Elec. Corp. v. Green, 624 S.W.2d 316, 317 (Tex. App.—Tyler 1981, writ ref’d n.r.e.)
(holding that error could not be determined where there was no record of evidence
presented at the hearing).
          In this case, appellants challenged the defect of parties in their responses to
Houston’s motions for summary judgment. The challenge to the defect in parties, was
as follows:
Initially, [d]efendants would show that there exists a defect of parties in
this proceeding. There are approximately 103 lots within Meadowcreek
subdivision Section C. Each lot owner should be joined as a party
pursuant to T.R.C.P. 39(a). Pursuant to T.R.C.P. [p]laintif has not plead
[sic] the names and reasons for not joining same of all interested parties
to this litigation. 
          Appellants have failed to preserve error. Not only have appellants failed to
request abatement of the suit, they have also failed to provide us with a record of a
hearing on the matter. We have no information that a hearing was conducted at all. 
Without a record of a hearing, a ruling, or a request for a hearing, we are unable to
determine whether the trial court abused its discretion. Accordingly, because we have
no basis to determine whether the trial court abused its discretion, we will not address
the merits of appellants’ eighth point of error.
Uniform Enforcement of Deed Restriction
            In point of error nine, appellants argue that the trial court erred in granting
Houston’s request for summary judgment because the City was not uniformly
enforcing the deed restrictions with regard to all property and residents. In his
response to Houston’s motion for summary judgment, appellant Giron reported that
“the City dismissed this cause as to the defendants, Travis H. and Barbara
McClaugherty.” Thus, the City was not “uniformly enforcing these restrictions as to
all persons and property.” 
          We note, however, that appellants’ brief reflects that the McClaughertys
“provided proof to the City that their chiropractic office had been operating
continuously since before August 30, 1965 (the date provided by Local Government
Code section 230.004 as placing a limitation on the City’s right to enforce the deed
restrictions).” Because the McClaughertys’ office operation predated the City’s
authority to enforce the deed restrictions, Houston properly nonsuited the cause of
action against them. We agree with Houston that “[u]niformity only requires that the
law [be] applied uniformly and not that the outcome of each application of the law
result[s] in the same outcome.” We conclude that appellants have failed to establish
a fact issue with regard to whether the deed restriction was uniformly applied to all
property and people. 
          We overrule point of error nine. 
Balancing Equities
          Appellants argue, in point of error ten, that the trial court erred by granting
summary judgment in favor of Houston because the court failed to balance the
equities. Appellants also contend that the trial court did not have sufficient
information upon which to balance the equities. Thus, appellants conclude, summary
judgment should have been denied. We disagree. 
          The Texas Supreme Court has constructed certain rules of law by which a court
of equity must be guided in determining whether to enforce a residential-only
restriction. Cowling v. Colligan, 312 S.W.2d 943, 945 (Tex. 1958). The court, in
Cowling, stated, “The equities favoring a particular (offending) owner is only one
facet of the judicial inquiry. Those equities must be weighed against the equities
favoring the lot owners who, having acquired their property on the strength of the
restriction, wish to preserve the residential character of the area. The judgment must
arise out of a balancing of equities or of relative hardships.” Id at 946.
          Here, in the absence of findings of fact, we must, using the record before us,
assume that the trial court did balance the equities and determined the equities were
with Houston, which sought to uphold the restrictions. Western Mgmt. Corp. v. High
Crest Realty Co., 331 S.W.2d 365, 367 (Tex. App.—Fort Worth 1960, writ ref’d). 
Additionally, appellants concede that they have maintained commercial businesses
in violation of the residential-only deed restriction. Further, in points of error one
through four, we performed a balancing test to determine if, in this particular case,
equity required the application of certain affirmative defenses. We held that, based
upon appellants’ own conduct, this case was not the proper venue to apply appellant’s
equitable affirmative defenses. Thus, we conclude that the trial court properly
rendered summary judgment in favor of Houston. 
          We overrule point of error ten. 
Conclusion
          We affirm the trial court’s judgment. We overrule all pending motions in this
case.
 
                                                                        Sherry Radack,
                                                                        Justice

Panel consists of Justices Hedges, Nuchia and Radack.



Publish. Tex. R. App. P. 47.